IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**RICHARD WILLIAMS, et al.**                                                                                              **PLAINTIFFS**

**V.**                                           **CASE NO. 3:24-CV-3046**

**DAVID WRITER, in his Official Capacity;**
**CARROLL COUNTY, ARKANSAS; and**
**NIMBUS WIND FARM, LLC**                                                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiffs' Motion to Remand (Doc. 15). Defendant Nimbus Wind Farm, LLC, filed a Response (Doc. 17), and Plaintiffs filed a Reply (Doc. 20). For the reasons that follow, the Motion to Remand (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**.

### I.  INTRODUCTION

This case concerns a contract between Nimbus Wind Farm, LLC, and Carroll County, Arkansas. Nimbus plans to build thirty wind turbines in Carroll County. On September 25, 2024, Nimbus and Carroll County entered a "Road Use and Maintenance Agreement" (the "Agreement") which was signed on behalf of Carroll County by County Judge David Writer. The Agreement gives Nimbus certain rights and powers related to public roads, including the right to use County rights-of-way for the benefit of the project. Plaintiffs own property in the Eastern District of Carroll County, (Doc. 3, ¶ 1); they believe that the wind turbines will "degrade[ ]" their "rural lifestyle" and the "natural beauty" of Carroll County, *id.* at p. 3–4, so they bring twelve challenges to the legality of the Agreement and seek declaratory and injunctive relief to prevent Nimbus and the County from acting according to its terms.

Plaintiffs originally filed this litigation on October 1, 2024, in the Circuit Court of Carroll County, Arkansas. *See* Doc. 3. Nimbus was served on October 7 and filed a notice of removal to this Court on November 4, asserting federal question and Class Action Fairness Act ("CAFA") jurisdiction. *See* Doc. 2. Nimbus did not obtain the consent of its codefendants. *Id.* ¶ 42. After removal, Nimbus filed a motion to dismiss for failure to state a claim (Doc. 9) and separate defendants Carroll County and County Judge David Writer filed a joint motion to dismiss for lack of jurisdiction and failure to state a claim (Doc. 11). On November 24, Plaintiffs timely filed the instant Motion to Remand (Doc. 14).

## II. LEGAL STANDARD

An action may be removed from state to federal court if it is one in which district courts would have original jurisdiction. 28 U.S.C. § 1441(a). If a federal court lacks subject matter jurisdiction over a removed action, the case must be remanded to the originating court. *See* 28 U.S.C. § 1447(c). District courts have so-called federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Pursuant to CAFA, district courts also have jurisdiction "over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014). CAFA's jurisdictional grant is, however, subject to both mandatory, *see* § 1332(d)(4)–(5), and discretionary, *see* § 1332(d)(3), exceptions. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367.

"[T]he party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). "Once CAFA's initial jurisdictional requirements have been established by the party seeking removal, however, the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies." *Id.*

The procedural requirements for removal under § 1441(a) are governed by 28 U.S.C. § 1446, but CAFA established less restrictive procedural requirements for removal of class actions, which are codified at 28 U.S.C. § 1453. Thus, "certain limitations on removal that might otherwise apply do not limit removal [of class actions] under § 1453(b)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 445 (2019).

### III.  DISCUSSION

The Court takes up the threshold issue of whether it has original jurisdiction first, then turns to whether the procedural requirements for removal were met, and then addresses supplemental jurisdiction over Plaintiffs' state-law claims.

### A.  Original Jurisdiction

Nimbus removed the case based on federal question and CAFA jurisdiction. Plaintiffs argue that their claims do not present a federal question and do not meet CAFA's jurisdictional requirements or are otherwise subject to a number of CAFA's exceptions.

#### *1. Federal Question Jurisdiction*

With respect to federal question jurisdiction, Nimbus points to Plaintiffs' takings claim (Count 1) which references both the U.S. and Arkansas Constitutions and Plaintiffs' due process claim (Count 12) which references only the U.S. Constitution. These claims plainly "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiffs attempt to argue otherwise, relying on this Court's decision in *First State Bank v. City of Elkins*, 2019 WL 2150388 (W.D. Ark. May 16, 2019), where the Court remanded Takings Clause and closely related due process claims. In that decision, the Court relied on the Supreme Court's since-overruled decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), *overruled by Knick v. Township of Scott*, 588 U.S. 180 (2019). The *Williamson County* Court held that, if an adequate procedure to seek compensation for the taking of private property exists, a property owner does not have a Fifth Amendment claim unless and "until it has used the procedure and been denied just compensation." 473 U.S. at 194. In *Knick*, the Supreme Court overruled *Williamson County*, holding that a plaintiff in a Takings Clause case need not exhaust state court remedies before bringing suit in federal court. 588 U.S. at 185. *Knick* controls here, and the Court, accordingly, has jurisdiction over Plaintiffs' takings and due process claims.

### 2. CAFA Jurisdiction

As to CAFA, Nimbus asserts that Plaintiffs' illegal exaction claim under Arkansas law (Count 11) is a class action that meets all of CAFA's jurisdictional requirements. Plaintiffs assert that Nimbus has not met the amount-in-controversy requirement of greater than $5,000,000. Plaintiffs also argue that a number of CAFA's exceptions apply.

The Eighth Circuit has held that illegal exaction claims under Arkansas law fall within CAFA's definition of "class actions." *Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 931 (8th Cir. 2013). That leaves the at-least-100-class-members, minimal-diversity, and greater-than-$5,000,000-in-controversy requirements. Illegal exaction claims create a class of all taxpayers impacted by an illegal tax or expenditure. Here, that class is Carroll County taxpayers. Carroll County has a population of approximately

28,000, *see* Doc. 2, ¶ 17, and the Court has no trouble concluding that over 100 of its residents pay taxes. Nimbus is a citizen of Delaware and Colorado, *see id.* ¶ 24, and at least some Carroll County taxpayers are citizens of Arkansas, so the minimal diversity requirement is also met.

There is some dispute about the burden of proving the amount in controversy. Nimbus asserts that "[t]o contest the jurisdictional minimum, a plaintiff must submit proof that would render the amount in controversy 'legally impossible.'" (Doc. 17, p. 13 (quoting *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019))). Not so. The legally impossible standard is "a pleading requirement, not a demand for proof," applicable "[w]hen plaintiffs have not challenged the removing defendant's amount-in-controversy allegations." *Id.* at 984 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). But where, as here, the plaintiffs do challenge the amount-in-controversy allegations, "the removing party bears the burden of showing by a preponderance of the evidence that the case meets [that] requirement[ ]. Failure to do so . . . results in a ticket back to state court." *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023) (citation omitted) (citing *Dart Cherokee*, 574 U.S. at 88–89).

Plaintiffs argue that the value of the illegal exaction claim is less than $5,000,000 because they are primarily seeking injunctive and declaratory relief, and it is unlikely that any illegal exactions for which Nimbus would have to pay damages—let alone $5,000,000 worth—occurred in the short time between the signing of the Agreement and the instant litigation. In support, Plaintiffs point out that Nimbus agreed to only a $1,000,000 performance bond for the Agreement. (Doc. 3, p. 24, ¶ 6(e)). Plaintiffs also offer Carroll

County's Annual Financial Report for 2023 which shows that county-wide expenditures on highways and streets for that year totaled $4,061,691.54. (Doc. 15-1).

Nimbus argues that the amount in controversy must be determined based on the value of the injunctive and declaratory relief. To that end, Nimbus offers the declaration of its Chief Commercial Officer, Mark Grail, who estimates that the value of the RUMA "is more than $5,000,000." (Doc. 17-1, ¶ 4). To support that claim, he offers the following:

- If the RUMA is declared void or enjoined, "Nimbus will need to construct entirely new private access roads to build the wind power project." *Id.* ¶ 5. These new roads would, naturally, cost more than $5,000,000 to build. *Id.*

- The project will "generate more than $14,000,000 in lease payments to Carroll County landowners over its 30-year lifespan." *Id.* ¶ 6.

- The project is "estimated to generate $25,000,000 in property tax revenue for Carroll County over its 30-year lifespan." *Id.* ¶ 7.

- The project is "expected to generate more than $5,000,000 worth of electricity over its 30-year lifespan." *Id.* ¶ 9.

- "If Nimbus is not able to complete the Carroll County wind power project due to an injunction, it will incur more than $5,000,000 in costs due to the cancellation of contracts to purchase wind turbines." *Id.* ¶ 10.

- "Nimbus has already invested more than $5,000,000 in development and procurement costs for the Carroll County wind project. If Nimbus is not able to complete the project due to an injunction, it will have lost more than $5,000,000 in unrecoverable investment costs." *Id.* ¶ 11.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). But it is not clear whether the Court can aggregate the value of all claims, including non-class claims, to meet CAFA's amount-in-controversy requirement. This is a relevant distinction here because while Plaintiffs seek to void the Agreement "in its entirety" based on their twelve federal and state law claims, *see* Doc. 3, ¶ 84, their single class claim for illegal exaction only

challenges "any expenditure by the County or County Judge in furtherance of the [Agreement], including but not limited to the use of county equipment pursuant to the terms of the [Agreement]," *id.* ¶ 70.

The only circuit that has addressed this question is the Ninth. In *Yocupicio v. PAE Group, LLC*, 795 F.3d 1057 (9th Cir. 2015), the court held that "[w]here a plaintiff files an action containing class claims as well as non-class claims, and the class claims do not meet the CAFA amount-in-controversy requirement . . . the amount involved in the non-class claims cannot be used to satisfy the CAFA jurisdictional amount." *Id.* at 1062. The court noted that CAFA directs that "'the claims of the individual class members' are to be aggregated in determining the amount in controversy, but class members are those 'who fall within the definition of the proposed or certified class in a class action.'" *Id.* at 1061 (footnotes omitted) (citing 28 U.S.C. § 1332(d)(6), (d)(1)(D)). "In light of the CAFA's detailed instructions for determining jurisdiction and aggregating class member claims within a class action," this Court "think[s] Congress would have similarly outlined how courts should aggregate between" class and non-class claims "had it intended for courts to do so." *Marple v. T-Mobile Cent. LLC*, 639 F.3d 1109, 1110 (8th Cir. 2011) (refusing to "aggregate[e] the amounts sought in separate class actions when determining whether the matter in controversy exceeds the sum of $5,000,000"). The Court therefore refuses to aggregate the value of claims other than Plaintiffs' illegal exaction claim.

Thus, the Court must decide whether Nimbus has proved by a preponderance of the evidence that the value of Plaintiffs' illegal exaction claim and any associated injunctive or declaratory relief could conceivably exceed $5,000,000. Mr. Grail's declaration does not state what, if any, expenditures the County has made or will make

pursuant to the Agreement. Indeed, in Nimbus's brief in support of its motion to dismiss (Doc. 10), arguing for dismissal of Plaintiffs' illegal exaction claim, Nimbus states that "the [Agreement] provides that Nimbus (and not the County) is responsible for expenditures under the agreement." *Id.* at p. 21. The County, for its part, agrees with Nimbus's characterization. *See* Doc. 12, p. 22. It appears we are all in agreement, then, that an injunction preventing the County from making expenditures in furtherance of the Agreement and damages for any pre-removal expenditures would not cost Nimbus or the County much, certainly not $5,000,000. Because Nimbus has not met its burden of establishing the amount in controversy by a preponderance of the evidence, the Court does not have jurisdiction over Plaintiffs' illegal exaction claim under CAFA. The Court therefore does not reach the CAFA exceptions argued by Plaintiffs. The Court could still exercise supplemental jurisdiction over this state law claim, as discussed below. *See infra* Section III.C.

### B. Removal Procedure

Plaintiffs also argue that removal was procedurally improper because Nimbus's codefendants did not consent. Nimbus responds that this case is a class action so unanimous consent to removal is not required under CAFA.

Section 1453, CAFA's removal provision, exempts class actions from some of the generally applicable restrictions on removal: "the 1-year limitation under section 1446(c)(1) shall not apply"; "[a] class action may be removed . . . without regard to whether any defendant is a citizen of the State in which the action is brought"; and "such action may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b). In *Reece v. Bank of New York Mellon*, 760 F.3d 771 (8th Cir. 2014), the Eighth Circuit rejected the plaintiff's argument that § 1453(b) applies only to class actions that

8

meet CAFA's higher amount-in-controversy requirement, holding that "[r]egardless of how federal jurisdiction over a class action arises, § 1453(b) unambiguously provides that the one-year removal limit in § 1446(c)(1) does not apply." *Id.* at 776.

By the same token, § 1453(b)'s exemption from the consent requirement applies to any case that meets CAFA's definition of "class action," regardless of whether CAFA's jurisdictional requirements are met. As previously discussed, Plaintiffs' illegal exaction claim under Arkansas law falls within CAFA's definition of class action. *Brown*, 738 F.3d at 931. Because Plaintiffs have brought a class action claim, Nimbus could remove "without the consent of all defendants." § 1453(b). Removal was therefore not procedurally improper.

### C. Supplemental Jurisdiction

In addition to their two federal claims, Plaintiffs bring ten state law claims including the illegal exaction claim, challenges to the County's purported exercise of eminent domain and alteration of county roads, and seven claims for declaratory judgment regarding the legality of various provisions of the Agreement under Arkansas law. Nimbus asserts that the Court can and should exercise supplemental jurisdiction over all ten state law claims. Where, as here, the Court has original jurisdiction over at least one claim, the Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Plaintiffs argue some of the claims are not part of the same case or controversy as their federal claims because they rely on Arkansas law. (Doc. 15, p. 7). Plaintiffs further argue that even if the Court has supplemental jurisdiction, it should, in its discretion, decline to exercise supplemental jurisdiction over their state law claims.

The Court agrees with Nimbus that all Plaintiffs' claims are part of a single case or controversy. Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact, and if considered without regard to their federal or state character, are such that they ordinarily would be expected to be adjudicated in one judicial proceeding." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1248 (8th Cir. 2006). The distinction between state and federal claims that Plaintiffs try to make out is not relevant to this determination. All the claims derive from a common nucleus of operative fact—Nimbus and the County's entry into the RUMA—and ordinarily would be expected to be adjudicated in a single proceeding. *See Hunter v. Page Cnty.*, 102 F.4th 853, 868–69 (8th Cir. 2024) (holding that federal due process and Iowa Open Meetings Act challenges to county board's issuance of commercial wind energy permit were part of the same case or controversy). Therefore, the Court must exercise supplemental jurisdiction over Plaintiffs' state law claims unless an enumerated exception applies, in which case the Court may, in its discretion, decline to exercise supplemental jurisdiction.

As relevant here, a court may decline to exercise supplemental jurisdiction over claims that raise "novel or complex issue[s] of State law" or that "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(1)–(2). In exercising its discretion under § 1367(c), a court should consider the interests in "comity, fairness, judicial economy, and convenience . . . that underline the supplemental jurisdiction statute." *Hunter*, 102 F.4th at 870.

> A case raises a novel or complex issue of state law when the case presents a state law issue of first impression, state law is unsettled, the case touches upon a fundamental interest of the state government (especially a state

constitutional issue), or federal resolution of the case would deprive the state courts of a fair opportunity to develop state law on a significant issue.

*Id.* "When a claim raises novel issues of state law, [the Eighth Circuit] ha[s] determined that it is better to let the state courts decide the matter." *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 766 (8th Cir. 2021).

A number of Plaintiffs' ten state law claims raise novel or complex issues of state law. In Count 2, for example, Plaintiffs assert that the Agreement constitutes an illegal attempt to exercise the power of eminent domain in violation of Arkansas Code § 18-15-103. Section 103, titled "Bill of Rights—Property Owner," was enacted in 2015, and there are no appellate cases interpreting any substantive provision of this statute. Act of April 6, 2015, 2015 Ark. Law Act 1101 (H.B. 1908); *see Stanley v. Ozarks Elec. Coop. Corp.*, 2019 Ark. App. 560 (2019) (addressing only jurisdictional issue). No Arkansas court has determined whether, as its title suggests, § 103 gives property owners "rights" on which they can sue, or instead whether, as § 103(a) says, its provisions are merely "principles" which "serve as standards to be followed" in eminent domain proceedings brought pursuant to existing causes of action.

Another example is Count 4, in which Plaintiffs assert that the Agreement unlawfully delegates police powers reserved for law enforcement to a private entity by allowing Nimbus to tow vehicles from public roads in emergencies. Plaintiffs cite Arkansas Code § 27-50-1207, which states that "[a] law enforcement agency that directs the removal of an unattended vehicle, abandoned vehicle, or impounded or seized vehicle shall adopt a written vehicle removal policy" consistent with the rest of the subchapter and that "[a]ll law enforcement officers shall comply with the policies" and refrain from certain prohibited conduct as relates to towing. Section 1207 also lays out the procedure

11

for challenging the legality of a vehicle removal under the subchapter. But § 1207 does not appear to be the source of law enforcement's power to tow vehicles from public roads, nor does it explicitly or implicitly restrict delegation of such power. There is little case law surrounding the source and scope of law enforcement's towing power, and the Court has been unable to find any Arkansas law on if and when a county can delegate law enforcement's towing authority.

State claims also substantially predominate over federal claims, another reason to decline supplemental jurisdiction. 28 U.S.C. § 1367(c)(2). State claims may substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Here, Plaintiffs' two federal claims, if proved, entitle them to compensation for infringements on their property rights, but their ten state claims "constitute[ ] the real body of [the] case" to which the federal claims are "only an appendage." *Id.* at 727. Plaintiffs' state law claims go far beyond their entitlement to just compensation and a pre-deprivation hearing, instead challenging the County's very power to enter the Agreement and its compliance with the state-law procedures constraining that power.

Comity militates strongly in favor of remanding Plaintiffs' state law claims. Plaintiffs' state law claims are not legally analogous to their federal takings and due process claims; they are instead based on various Arkansas laws defining the powers and obligations of county governments. And some of these laws have little, if any, case law interpreting them. *Marianist Province of the U.S. v. City of Kirkwood*, 944 F.3d 996, 1003–04 (8th Cir. 2019). "Needless decisions of state law should be avoided both as a matter of comity and

to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. Further, there is no unfairness in declining supplemental jurisdiction because litigants are on notice that supplemental jurisdiction is not guaranteed. *Marianist Province*, 944 F.3d at 1004. Once the Court has decided not to exercise supplemental jurisdiction over some state law claims, "judicial economy and convenience no longer weigh[ ] in favor of the federal courts" reaching other state law issues. *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 766 (8th Cir. 2021).

Because comity weighs heavily in favor of remanding Plaintiffs' state law claims, and none of the other interests bearing on the Court's discretion weigh against, the Court finds that remand of all Plaintiffs' state law claims is appropriate.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' state law claims (Counts 2–11) are hereby **REMANDED** to the Circuit Court of Carroll County, Arkansas. Plaintiffs' responses to Defendants' motions to dismiss as to jurisdiction and failure to state a claim in Counts 1 and 12 shall be filed by no later than August 5, 2025.

**IT IS SO ORDERED** on this 28th day of July, 2025.

```
_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE
```