IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**RICHARD WILLIAMS et al.**                                                                       **PLAINTIFFS**

**V.**                                        **CASE NO. 3:24-CV-3046**

**DAVID WRITER, in his Official Capacity; and**
**CARROLL COUNTY, ARKANSAS**                                       **DEFENDANTS**

### OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss (Doc. 11). Plaintiffs did not file a response in opposition and the deadline to do so has passed. Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiffs' case under Federal Rule of Civil Procedure 12(b)(1) and that Plaintiffs failed to state claim upon which relief can be granted under Rule 12(b)(6). The Court previously declined to exercise supplemental jurisdiction over Plaintiffs' ten state law claims and remanded them. *See* Doc. 23.

This case arises out of Carroll County's entry of a Road Use and Maintenance Agreement (the "Agreement" or the "RUMA") with Nimbus Wind Farm. Nimbus plans to build thirty wind turbines in Carroll County, and the Agreement gives Nimbus certain rights and powers related to public roads, including the right to use county "Road rights-of-way for Cables or electric lines serving and benefiting the Project." (Doc. 3, p. 7, ¶ 23). Plaintiffs allege that they own land burdened by the County's rights-of-way and that the expansion of these rights-of-way to permit Nimbus's utility lines constitutes an unconstitutional taking and violates due process.

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**. The Court rejects Defendants' jurisdictional arguments

and finds that Plaintiffs have stated a plausible takings claim but have failed to state a plausible due process claim.

## I.  JURISDICTION

The Court first takes up the threshold question of jurisdiction. Defendants offer two arguments for why the Court lacks subject-matter jurisdiction to hear this case: (1) Arkansas law limits the Court's jurisdiction; and (2) Plaintiffs lack standing.

### A.  State Court Jurisdiction and Exhaustion

Defendants raise two arguments for why Arkansas law limits the Court's jurisdiction to hear this case. First, they point to the Arkansas law vesting exclusive original jurisdiction in the Arkansas County Courts, arguing this state law deprives *federal courts* of jurisdiction. *See* Doc. 12, pp. 4–5 (citing Ark. Const. art. 7, § 28). Here, Plaintiffs bring claims under the Fifth and Fourteenth Amendments of the U.S. Constitution. *See* Doc. 3, ¶¶ 25 & 74. Although a state's laws may—in *diversity* cases—limit a federal court's jurisdiction, "where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State." *Angel v. Bullington*, 330 U.S. 183, 192 (1947) (citing *Holmberg v. Armbrecht*, 327 U.S. 392 (1946)).

Second, they attempt to revive the state court exhaustion requirement that the Supreme Court squarely rejected in *Knick v. Township of Scott*, 588 U.S. 180 (2019), by misreading the Court's more recent decision in *DeVillier v. Texas*, 601 U.S. 285 (2024). In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court held that, where the government "provides an adequate procedure for seeking just compensation," a Takings Clause claim is not ripe

until the property owner "has used the procedure and been denied just compensation."
*Id.* at 195. The Court overruled *Williamson County* in 2019, concluding "that the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs." *Knick*, 588 U.S. at 185. Thus, a property owner whose property is taken for public use may sue in federal court "at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 190.

Defendants assert that *DeVillier* held that "takings claims [are] not cognizable in the first instance and must be litigated through a state's inverse condemnation action." *See* Doc. 12, p. 6. But *DeVillier* was not about state-court exhaustion at all—it was about whether a property owner can bring a Takings Clause claim directly under the Takings Clause without a legislatively created cause of action.

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *DeVillier*, 601 U.S. at 291. In Takings Clause cases against municipalities, this is not a problem because 42 U.S.C. § 1983 provides a federal cause of action. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But in *DeVillier*, § 1983 was unavailable because the defendant was the state of Texas, not a municipality. *See Nichols v. Rysavy*, 809 F.2d 1317, 1334 n.19 (8th Cir. 1987) ("A state is immune from a section 1983 suit under the eleventh amendment."). But the Court concluded that it did not need to determine whether a property owner can sue directly under the Takings Clause—without a legislatively created cause of action—because Texas had a state-created cause of action. *DeVillier*, 601 U.S. at 293. Thus, the property owners could "pursue their claims under the Takings Clause through the cause of action available under Texas law." *Id.* at 944.

3

Here, the state of Arkansas is not a defendant, and Plaintiffs can bring their Takings and Due Process claims against Carroll County and its officer, David Writer, in federal court under § 1983. Whether they have sufficiently pled these claims under § 1983 is addressed below.

## B.  Standing

Defendants also argue that Plaintiffs do not have standing to bring their claims. Defendants assert that Plaintiffs have not established standing because they "broadly assert that they are 'owners of real property in the Eastern District of Carroll County,'" without, according to Defendants, further elaboration. (Doc. 12, p. 8 (quoting Doc. 3, ¶ 1)). However, Plaintiffs allege elsewhere in their Complaint that they each "own the real property underlying the easements for the public roads designated in the RUMA." (Doc. 3, ¶ 21).

Plaintiffs who file suit in federal court must establish they have standing to sue, which requires proof of: (1) an injury in fact, i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent," that is (2) "fairly traceable to the challenged action of the defendants" and (3) for which it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified).

Here, Plaintiffs have sufficiently alleged facts supporting standing. While just owning property somewhere in the County would not be sufficient to establish injury, Plaintiffs assert that they own real property underlying the road easements that are allegedly expanded by the Agreement. (Doc. 3, ¶ 21). The expansion of an existing public easement injures Plaintiffs as owners of the servient estates, that injury is fairly traceable

4

to the County's entry into the Agreement, and it would be redressed by a favorable decision of this Court. Plaintiffs therefore have standing to bring their claims here.

## II. RULE 12(b)(6)

Next, the Court turns to whether Plaintiffs have stated plausible claims for relief under Rule 12(b)(6) on their remaining claims under the Fifth and Fourteenth Amendments. To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## A. Fifth Amendment Takings Clause Claim

With respect to Plaintiffs' Takings Clause claim, Defendants once again misread and misstate the holding of *DeVillier*. Defendants assert that "the Supreme Court unanimously held that where there is a state-law cause of action available for an owner to seek just compensation for an alleged taking by a state or local government (or corporation), the owner must pursue the state-law cause of action, and the owner is not permitted to bring a claim under the Takings Clause of the Fifth Amendment to the U.S. Constitution." (Doc. 12, p. 9). As discussed above, *DeVillier* holds no such thing. And

Defendants once again ignore the important distinction between state and local governments, namely that local governments are amenable to suit under a federal cause of action, § 1983, while state governments are not. Plaintiffs' failure to actually cite § 1983 in their complaint is not fatal to their Takings Clause claims. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").

Defendants also argue that the County has not exercised its eminent domain power against Plaintiffs and that Plaintiffs have not alleged that "their property interests have been actually restrained." (Doc. 12, p. 11). Plaintiffs' Complaint points to the "Utility Encroachment" provision of the Agreement as grounds for their takings claims. That provision states: "The County represents that it has the authority to grant Developer the right to use Road rights-of-way for Cables or electric lines serving and benefiting the Project." (Doc. 3, p. 7, ¶ 23). Plaintiffs also assert that a "county road is a right of ingress and egress only." *Id.* ¶ 24.

"A right-of-way is an easement . . . ." *Craighead Elec. Co-op. Corp. v. Craighead Cnty.*, 352 Ark. 76, 81 (2003). "Appropriation of a public easement across a landowner's property is the taking of a property interest rather than a mere restriction on the land's use." *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997). Plaintiffs groundlessly assert that a county road right-of-way is limited to ingress and egress only, in which case the addition of utility lines is necessarily a new easement or an expansion of the existing one. But the scope of an easement actually presents more involved factual and legal questions that the Court flags but cannot resolve at this early stage.

6

In Arkansas, county roads can be established in a number of ways, including condemnation, donation, and prescription. *Frazier-Hampton v. Hesterly*, 89 Ark. App. 211, 213 (2005) (citing *Neyland v. Hunter,* 282 Ark. 323 (1984)). When a county road is created by prescriptive easement, the scope of the easement is limited to the historical adverse use giving rise to the easement. A county cannot "enlarge the prescriptive right except by just compensation to or the permission of the adjoining easement owner or landowner." *Craighead*, 352 Ark. at 82.

But when a county road is established by an express easement, the scope is set by the instrument creating the easement. *McBride v. Strain*, 1996 WL 391679, at *5 (Ark. Ct. App. July 3, 1996); *Diamond K. Invs., Inc. v. 1330 LLC*, 2024 Ark. App. 433, 698 S.W.3d 653 (2024), *review denied* (Nov. 21, 2024). Such an easement may include uses beyond ingress and egress, including such uses as above-ground utility lines or below-ground utility pipes. And, like other interests in real property, an easement can be conveyed.

Here, Plaintiffs do not say, and may not know, how the county roads burdening their properties were created, so it is impossible to ascertain the scope of the County's existing easements at this time. However, it is plausible that the county road easements at issue here are, indeed, limited to ingress and egress. *See Ark. State Highway Comm'n v. Cordes Motors, Inc.*, 315 Ark. 285, 287 (1993) ("Many of the early county roads were acquired by prescriptive right . . . ."). In that case, the purported grant to Nimbus of the right to install cables and electric lines in the County's easements would be an additional easement or an enlargement of the existing easement which constitutes a taking and

requires just compensation. Therefore, Plaintiffs have plausibly stated a takings claim at this stage of proceedings.

Defendants' argument that the Agreement is "[m]ere plotting or planning in anticipation of an improvement" is unavailing. (Doc. 12, p. 12). The City has purported to grant Nimbus the right to install its lines on Plaintiffs' property, thereby depriving Plaintiffs of their right to exclude Nimbus from possession and use of the land. Loss of this right to exclude is sufficient to support a takings claim even before the physical occupation actually occurs. *See McKenzie*, 112 F.3d at 317; *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 162 (2021) (finding *per se* physical taking where "the regulation [at issue] grant[ed] a formal entitlement to physically invade the growers' land"); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("[A] permanent physical occupation authorized by government is a taking . . . ."). Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' takings claim (Count 1).

### B. Fourteenth Amendment Procedural Due Process Claims

Plaintiffs' other remaining claim is for a deprivation of the procedural due process guaranteed by the Fourteenth Amendment. Plaintiffs assert that "the RUMA is constitutionally invalid as it provides Plaintiffs no notice of the deprivation of the property rights by Defendant as detailed herein, and no opportunity to be heard prior to that deprivation." (Doc. 3, ¶ 76).[1]

"In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation

---

[1] Like their takings claim, Plaintiffs' due process claim is not defeated by their failure to invoke § 1983.

tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). However, nowhere in their Complaint do Plaintiffs provide any facts preceding the alleged taking via the County's entry into the Agreement. Instead, they appear to contend that the Agreement *itself* needed to contain a notice and hearing provision for affected property owners to challenge the Agreement before it went into effect. But that's not necessary. Instead, the relevant question is what the County did to provide property owners notice and an opportunity to be heard *before* entering the Agreement. Plaintiffs offer no factual allegations surrounding that process, and the Court is not bound to accept their legal conclusion that it was inadequate. Defendants' Motion to Dismiss is therefore **GRANTED** as to Plaintiffs' procedural due process claim (Count 12).

### III.  CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' due process claim (Count 12) is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED on this 5th day of September, 2025.

 

 

 

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE